Hires *v.* Hires.

## ELIZA M. HIRES

*v.*

## WILLIAM N. HIRES.

[Filed March 16th, 1901.]

1. A divorce cannot be granted where any element in the proofs necessary to sustain the decree is wholly dependent upon the uncorroborated testimony of the complainant.

2. *Quære.* Whether mere abstention by a husband from the exercise of his marital rights is willful, continued and obstinate desertion, within the meaning of the New Jersey statute, where he continues to live in the same house with the wife, though occupying a separate sleeping-room, and pays, though in parsimonious fashion, for the support of the wife.

On bill, answer and proofs.

*Mr. Edward Dudley,* for the complainant.

*Mr. Howard Carrow,* for the defendant.

GREY, V. C. (orally).

This bill is filed for a divorce because of the alleged desertion of the wife by the husband and for alimony for the support of the wife and a minor child. The residence of the parties in this state is satisfactorily proven. The marriage, which took place in 1877, is also proven without dispute. The parties lived together as man and wife from 1877 to 1896, apparently without contention. Two children were born of the marriage; at the time of the alleged desertion the youngest was about six or seven years of age and the oldest one about nineteen or twenty.

The proofs submitted by the complainant to sustain the alleged desertion consist wholly of her own testimony and that of her daughter, the oldest of the two children. No other testimony is offered. The defendant offers no testimony at all. The cause must, therefore, be determined upon the sufficiency of the testimony offered on the part of the complainant.

It is shown that, in 1896, the husband, though he continued to live in the same house, separated himself from his wife, by taking a separate room, and having his belongings removed to it. She swears that since that time he has neither exercised his marital privileges, nor solicited her to permit him to exercise those rights. She further testifies that the husband, though continuing to live in the same house, refused to speak to her. Upon further examination, however, this element of proof weakened somewhat, for it appeared that this refusal was not absolute and invariable, but only occasional. It might have been the result of a disagreeable temper, and certainly did not amount to an exhibition of a fixed purpose, on the part of the husband, to have no further communication with his wife. This mode of life continued from 1896 until the month of November, 1899, when the wife says that the husband went away from Camden to Malvern, Pennsylvania, where he has since resided without her or the younger child, the older one having meantime married. The wife admits that during the whole period she has had the use and occupancy of their home and its equipment, bought for her by her husband, and that he has paid $30

per month for the support of herself and her minor child. The wife claims that this is wholly inadequate for their support.

The married daughter was the only other witness. She lived at home during the alleged period of desertion, from 1896 up to the month of November, 1899, when she married and left her father's house. She testifies that, in 1896, her father directed her to prepare for him a separate bedroom from her mother. This she did, and moved into it his personal belongings. She says that from this time until she left her father's house he slept apart from her mother in the room so prepared for him. What happened in her father's house after that time, as to detail of their living, the daughter says she knows only from what her mother and sister told her.

The allegation is that this proof shows a willful, continued and obstinate desertion by the husband of the wife for the period of two years.

So far as desertion is claimed to have been indicated by the proof of insufficient support, it goes but a very little way. If the question to be determined was the reasonable adequacy of the amount of $30 per month, with relation to the yearly salary of the husband ($1,500 per year), it would probably be held that the allowance was an insufficient sum. That is not, however, the question at issue. The character of the support given by the husband is relevant in desertion cases as an indication of a willful intent to abandon the wife. The husband intending to cast her off, refuses to support her. But in this case the husband has continuously made provision for the housing and maintenance of the wife and child, rather niggardly in amount, but not so insufficient as to indicate an intent to abandon her or to drive her away.

Although the parties lived, up to a very recent period, in the same house, there is no proof of any declaration of a purpose by the husband to separate himself from the wife, or to discard her. They lived in the same house, dined at the same table, sat in the same room, but occupied different bedrooms.

Whatever there is in the testimony which is evidential of a desertion appears to depend upon the proof of the absence of sexual intercourse. Accepting the wife's testimony, it is shown

that there was none for some four years; that this was her husband's choice, and that, during that time, there was no solicitation on his part. The case, on this phase of it, seems to present the question whether mere unexplained abstention on the part of the husband from sexual intercourse with his wife, though living in the same house with her and supporting her, amounts to a desertion under our statute.

There is no reported case in this state which passes upon this question. In *Anshutz* v. *Anshutz, 1 C. E. Gr. 163,* on bill filed for alimony only, there is a *dictum* that where the husband refuses to have any intercourse with his wife, or to make any provision for her maintenance, it may be held an abandonment, under the act giving alimony, although the parties continue to live under the same roof. In *Weigand* v. *Weigand, 14 Stew. Eq. 208,* also under the Alimony act, the case presented the question whether the adultery of the husband, committed continuously in his own house, was an abandonment of the wife, when she, for that reason, left his house and went elsewhere, and it was held that this was an abandonment by him. In that case the conduct of the husband was so gross that there was little difficulty in holding that he had driven his wife away.

In the case now under consideration the proofs do not exhibit any refusal of sexual intercourse, but simply an abstention therefrom, and without showing any attending circumstances which might indicate the reason therefor.

Mr. Bishop (*1 Bish. Mar. & D. § 1677 et seq.*) declares that sexual intercourse is of the very essence of the marriage contract. That a man may lawfully obligate himself to do for a woman, not his wife, every other act incident to the marriage relation, such as supporting her, or her children, retaining her in his house, and to be kind to her, and she may bind herself in a corresponding way to him. There is but one thing which is special to marriage, and is lawful in no other relation. The learned author hence draws the conclusion that

"the married party who permanently and irrevocably withdraws from all that is peculiar to marriage, whatever incidentals he may adhere to, commits matrimonial desertion."

Hires *v.* Hires.

It is not, in my view, necessary, in this case, to determine this question. All the proof which goes to show the essential fact of non-intercourse comes from the lips of the complaining wife only. There is no attempt at corroboration other than that given by the testimony of the daughter, that during the period that she lived at home, from 1896 to 1899, when she married and moved away, her father and mother did not sleep in the same room. From the time she went away, in 1899, to the time of filing the bill, on February 3d, 1900, there is no other proof on the subject than that given by the wife. The husband went to Malvern to live in 1899, but from the time of the marriage of the daughter until he went to Malvern he and his wife lived in the same house, and there is no other testimony than hers that they slept in different rooms.

Nor is there, in the testimony of the daughter, any proof of such an antipathy on the part of the husband towards the wife that it may reasonably be inferred that they had no sexual relations. There is no proof of continuous quarrels, or of any course of conduct which indicated a permanent sense of aversion on the part of the husband towards the wife. The reason for their separation is wholly unexplained, even by the testimony of the wife. All that is given by her is the fact that they had no sexual relations.

The testimony of the daughter is only measurably corroborative of that of the wife as to the relations of the parties during the period after 1896, when she did live at her father's house. All she proves is that the husband and wife occupied different sleeping-rooms. This does not prove that there was no sexual intercourse. Such separate sleeping arrangements may have been the result of choice, for various reasons other than a denial by the husband of access for sexual intercourse. To give this latter color to such testimony we are wholly dependent upon the testimony of the wife, the complainant in the cause.

The rule is conclusively settled in this state that a decree for divorce will not be granted where the establishment of some essential element necessary to the relief sought depends upon the uncorroborated testimony of the complainant. The cases are collated in *Herold* v. *Herold, 2 Dick. Ch. Rep. 214.* In

that case there was a denial by the husband of the testimony of the wife, and it was held that more than the uncorroborated testimony of the wife was required. The rule is, however, the same in *ex parte* cases, where there is no denial of the testimony of the complaining party. When the complainant comes into court and invokes the affirmative action of the court in her behalf, she must, in case she asks a divorce, support her own testimony, as to essential points, by corroborative evidence. *Tate* v. *Tate, 11 C. E. Gr. 55; Pullen* v. *Pullen, 2 Stew. Eq. 542,* and other cases which were *ex parte.* This rule has also been upheld in the court of appeals, in an *ex parte* case, where there was no denial by the defendant of facts sought to be established by the uncorroborated testimony of the complainant. *McShane* v. *McShane, 18 Stew. Eq. 341.* In that case the court of appeals held that "a divorce for desertion will not be granted upon the unsupported testimony of the petitioner as to his residence in this state and as to the causes of the alleged desertion." In the present case the only ground upon which a decree for desertion could possibly be awarded is the denial by the husband to the wife of rights to which she is entitled under the marriage contract. Proof of that denial rests entirely upon the unsupported testimony of the wife. Under these circumstances, I must refuse a decree. The complainant's bill will be dismissed, but without costs. In view of the proofs, I think it should be without prejudice to the complainant, if she should file another bill for desertion, to allege in that bill, as the period of desertion, either the whole or part of the period referred to in the proofs in this cause.

I will advise an order dismissing the bill of complaint, with that limitation.